David S. Elder (TX 06507700)
Benjamin H. Price (TX 24060441)
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas 75201-4761
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

COUNSEL FOR BANK OF THE WEST

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| OK ETON SQUARE, L.P., | § | Case No. 10-33583-BJH-11 |
| | § | |
| Debtor. | § | |

**OBJECTION TO DEBTOR'S DISCLOSURE STATEMENT**

Bank of the West ("**BOTW**") hereby files this *Objection to Debtor's Disclosure Statement* (the "**Objection**"). In support of the Objection, the BOTW respectfully states as follows:

**I.
PRELIMINARY STATEMENT**

Through this Objection, BOTW respectfully requests for the Court to deny the approval of the disclosure statement (the "**Disclosure Statement**") filed by the above-captioned debtor (the "**Debtor**") in conjunction with its chapter 11 plan (the "**Plan**") on December 7, 2010. The Disclosure Statement provides very little information regarding the future prospects for the Debtor, preventing BOTW and the Court from having any hope of evaluating the viability of the Debtor's business and its ability to effectuate a proposed reorganization. Furthermore, the Plan is unconfirmable in its current form due to the fact (i) the Plan is not "feasible" within the meaning of section 1129(a)(11), and (ii) the Plan is not "fair and equitable" within the meaning

of section 1129(b). BOTW and the Debtor are currently engaged in good faith discussions regarding the Debtor's treatment of BOTW through the Plan and possible modifications thereto. However, BOTW submits this Objection based on the lack of information in the Disclosure Statement and the unconfirmable nature of the Plan as currently proposed.

## II.
## BACKGROUND

1.      On May 24, 2010 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"). The Debtor operates a shopping center with retail and business space in Tulsa, Oklahoma (the "**Real Property**").

### A.     BOTW's Claims Against the Debtor

2.      On or September 27, 1999, BOTW extended credit to TCI Eton Square, L.P. ("**TCI**"),[1] evidenced by a Promissory Note in the original principal amount of Ten Million Five-Hundred Thousand Dollars ($10,500,000.00) (as amended, modified or restated from time to time, the "**Note**").

3.      The Note is secured by, among other things, (i) a mortgage on the Real Property executed on September 27, 1999, and recorded in the Office of the County Clerk of Tulsa county, Oklahoma, in Book 6277, Page 2347, as Document No. 99117363, of the real property records of Tulsa County, Oklahoma (as amended, modified or restated from time to time, the "**Mortgage**") and (ii) an Assignment of Leases and Rents executed September 27, 1999, and recorded in Book 6277, Page 2363, as Document No. 99117364 (as amended, modified or restated from time to time, the "**Assignment**" and, together with the Note and the Mortgage, the

---

[1] TCI Eton Square, L.P., changed its name to OK Eton Square, L.P., pursuant to a Certificate of Amendment filed on May 19, 2010.

"**Loan Documents**").² The Mortgage and the Assignment also granted BOTW a security interest in certain collateral described therein. BOTW filed UCC-1 Financing Statements in the records of the County Clerk of Oklahoma County, Oklahoma, and in the records of the County Clerk of Tulsa County, Oklahoma, perfecting its security interest in the collateral.

4. The Note, as amended, matured prior to the Petition Date. On May 12, 2010, BOTW filed the *Verified Petition and Application for Appointment of a Receiver* (the "**State Court Lawsuit**") in the District Court of Tulsa County, Oklahoma, asking that court, *inter alia*, for: (i) a money judgment due to TCI's breach of the Note, (ii) an order allowing BOTW to foreclose on its liens created by the Loan Documents, and (iii) the appointment of a receiver to take possession and charge of the Real Property. The Debtor filed this bankruptcy case 12 days later. As of the Petition Date, the Debtor was indebted to BOTW in the amount of at least $9,211,701.51 plus additional fees, costs, expenses and other charges to which BOTW is entitled (collectively, the "**BOTW Debt**"). In its Disclosure Statement, the Debtor alleges the value of the Real Property to be "over $10,000,000.00."

### B. US Trustee's Motion to Dismiss and the Debtor's Plan and Disclosure Statement

5. On December 3, 2010, the United States Trustee filed a *Motion to Dismiss Case or Convert Case to Chapter 7* [Docket No. 27] (the "**UST Motion**"). As noted in the UST Motion:

  i. about 50% of the office space 25% of the retail space located at the Real Property is currently vacant; and

  ii. the Debtor has not provided the US Trustee with evidence of a debtor-in-possession bank account.

---

²The Loan Documents are voluminous and have therefore not been attached to this Objection. Copies are available upon request to BOTW's counsel of record.

The UST Motion is set for hearing on January 20, 2011.

6. On December 5, 2010, BOTW filed its *Motion for Relief from the Automatic Stay* [Docket No. 28] (the "**Lift Stay Motion**"), asking the Court for relief from the automatic stay since the Debtor was not adequately protecting BOTW's interests in its collateral.

7. On December 7, 2010, the Debtor filed its Plan and Disclosure Statement. A hearing on the Disclosure Statement has been set for January 19, 2011.

## III.
## OBJECTION #1: LACK OF ADEQUATE INFORMATION

8. "Disclosure is the 'pivotal' concept of chapter 11 reorganization." *In re Westland Oil Dev. Corp.*, 157 B.R. 100, 102 (S.D. Tex. 1993). As noted by the Fifth Circuit, "the interests of both the creditors who plan their actions in the bankruptcy proceeding on the basis of the information supplied by the disclosure statements and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete." *In re Coastal Plains*, 179 F.3d. 197, 208 (5th Cir. 1999).

9. Section 1125 sets forth the approval requirements for a disclosure statement. As noted in section 1125, a disclosure statement must contain "adequate information" in order to be approved by a court. 11 U.S.C. § 1125(b). The determination of what constitutes "adequate information" is made on a case-by-case basis. *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988). "While 'adequate information' for making an informed judgment is a flexible concept that permits the degree of disclosure to be tailored to the particular situation, there nevertheless is an irreducible minimum" and "an informed judgment cannot be made without information about the plan and about how the provisions of the plan will be put into effect." *In re Michelson*, 141 B.R. 715, 718 (Bankr. E.D. Cal. 1992) . The burden of proving that adequate

information is disclosed rests on the plan proponent, and "the proponent should be biased towards more disclosure [rather than] less." *Id*. at 720.

10. For a disclosure statement to meet the adequate information standard, it must include financial information relevant to a creditors' decision to accept or reject the plan. *See, e.g., In re Metrocraft Publishing Services, Inc.,* 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984); *In re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990). As noted in *Metrocraft*, Courts typically require adequate disclosure of, *inter alia*, the following information:

(1) the events which led to the filing of a bankruptcy petition;
(2) a description of the available assets and their value;
(3) the anticipated future of the debtor;
(4) the source of information stated in the disclosure statement;
(5) the accounting method utilized to produce financial information and the name of the accountants responsible for such information;
(6) the future management of the debtor;
(7) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the chapter 11 plan; and
(8) information relevant to the risks posed to creditors under the plan.

*Id.*

11. On its face, the Disclosure Statement fails to provide "adequate information" as required by 11 U.S.C. § 1125 and is severely deficient. The Debtor "believes" the fair market value of the Real Property to be "over $10,000,000," but provides no support for that valuation. *See In re Reilly,* 71 B.R. 132, 133, 135 (D. Mont. Bankr. 1987) (rejecting a disclosure statement that failed to set forth the appraisal value of the real property in the estate and deeming the debtor's "best estimate" of the property's value insufficient). Additionally, the history of the Debtor (financial and otherwise) and the events leading to the filing of this case are barely referenced in the Disclosure Statement. Clearly, there is a lack of adequate information in the Disclosure Statement about the Debtor's past financial performance.

12. Furthermore, "[t[he Disclosure Statement should include *a discussion of the anticipated future of the debtor's business*….Information regarding the accounting and valuation methods used in preparation of the Disclosure Statement's financial exhibits must also be included." *In re Cardinal Congregate* at 767 (emphasis added). The Disclosure Statement contains no discussion of the anticipated future of the Debtor's business and no specifics on measures that will be undertaken to improve the Real Property's financial performance. There is no discussion of the future management of the Debtor. The projections included as an exhibit to the Disclosure Statement provide little useful information and creditors are not given any information on the source of these projections or the methods used to derive them. Additionally, the complete lack of information regarding the Debtor's current tenants, rents, and lease maturities prevents interested parties from making a determination on the feasibility of the Debtor's future income projections. The Disclosure Statement does not contemplate additional financing and it provides no information on fair-market interest rates and loan terms on first lien commercial mortgages. It is impossible for the Court and interested parties to make an informed decision on the prospects for the Debtor's reorganization without this basic information.

13. "[C]reditors are not expected to be mindreaders or clairvoyant." *In re Adana Mortgage Bankers, Inc.*, 14 B.R. 29, 30 (Bankr. N.D. Ga. 1981). The Debtor's Disclosure Statement is essentially a "superficial outline rather than means for providing detailed information such that hypothetical reasonable investor could make informed judgment about plan." *In re Medley*, 58 B.R. 255 (Bankr. E.D. Mo. 1986). Allowing the Debtor to get away with such a limited disclosure would severely harm the creditors of this estate.

# IV.
# OBJECTION #2: UNCONFIRMABLE PLAN

14. "[N]otwithstanding adequate disclosure of information required by section 1125(b), a disclosure statement should not be approved if the proposed plan, as a matter of law, cannot be confirmed." *In re Allied Gaming Mgmt., Inc.*, 209 B.R. 201, 202 (Bankr. W.D. La. 1997); *see also In re Silberkraus*, 253 B.R. 890, 899 (Bankr. C.D. Cal. 2000) (internal citations omitted) ("where a plan is on its face nonconfirmable, as a matter of law, it is appropriate for the court to deny approval of the disclosure statement describing the nonconfirmable plan.").

15. The Plan accompanying the Disclosure Statement could never be confirmed. Among other things, (i) the Plan is not "feasible" within the meaning of section 1129(a)(11), and (ii) the Plan is not "fair and equitable" within the meaning of section 1129(b).

A. **Feasibility**

16. The Bankruptcy Code requires a plan to be "feasible" in order to be confirmed under section 1129(a)(11), noting confirmation is only appropriate if "confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor..." 11 U.S.C. § 1129(a)(11); *see also In re Lakeside Global II, Ltd.*, 116 B.R. 499, 507 (Bankr. S.D. Tex. 1989) ("A plan may not be confirmed if it is not feasible, regardless of the sincere and honest intentions of the proponent."). The purpose of the feasibility requirement is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation. *See In re Lakeside Global II, Ltd.* at 506. In determining the feasibility of a plan, the Court must find a "reasonable assurance of commercial viability" and "a reasonable probability of success." *Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*,

116 F.3d 790, 801 (5th Cir. 1997). The burden to show feasibility is on the Debtor. *In re Lakeside Global II, Ltd.* at 507.

17. Here, the Plan is textbook example of an unfeasible plan. Despite the fact that the inadequacy of its capital structure forced the Debtor into bankruptcy, no additional financing or capital contributions are contemplated by the Plan. The Debtor's monthly operating reports do not show a sufficient amount of cash flow to amortize the BOTW Debt and there is no indication that performance will improve in the coming years. No potential drivers of new business are acknowledged and no changes to management are contemplated. "Feasible plans are fashioned on reliable financial projections, not on projected fly-by-the-pants ad hoc adjustments to compensate for expected shortages. If the plane cannot fly, it needs to be fixed before, not after, it leaves the ground." *In re Associated Wood Products, Inc.*, 323 B.R. 479, 483 (Bankr. D. Minn. 2005). The Debtor has not provided any reliable financial projections or other assurances to indicate that this plane can fly. Clearly, the Debtor has not met its burden of showing that its Plan is "feasible."

### B. Fair and Equitable

18. Since BOTW will vote against the Plan in its current form, the Debtor must additionally comply with the cram-down provisions of the Bankruptcy Code in order to confirm the Plan. Before the claims of a dissenting class of secured creditors may be crammed down, the court must determine that the plan "does not discriminate unfairly, and is fair and equitable." 11 U.S.C. § 1129(b)(1).

19. One of the key questions that a court must consider when a debtor proposes to cram down on a secured creditor is whether the deferral in repayment of the secured creditor's debt is "reasonable." *Great Western Bank v. Sierra Woods Group*, 953 F.2d 1174, 1177 (9th Cir.

1992). When determining whether the terms of a secured creditor's treatment are fair and equitable, courts consider whether a debtor would be able to get a loan on similar terms in the prevailing market. *See In re Northwest Timberline Enter., Inc.*, 348 B.R. 412 (Bankr. N.D. Tex. 2006); *see also U.S. v. Camino Real Landscape Maint. Contractors, Inc. (In re Camino Real Landscape Maint. Contractors, Inc.)*, 818 F.2d 1503, 1505 (9th Cir. 1987) (holding that in determining the appropriate discount rate, a court must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration of the quality of the security and the risk of subsequent default). The proposal made to BOTW – including interest at the prime rate with minimal upward adjustments, interest only for the first year, and an "excess income" reduction of principal starting in year 2 – would be laughed at by a lender in the prevailing market. "When the proposed distribution would substantially shift the risk of failure of the plan from a junior class to a senior dissenting class for no legitimate purpose, the plan is not fair and equitable to the dissenting class*.*" *Aetna Realty Inv., Inc. v. Monarch Beach Venture, Ltd. (In re Monarch Beach Venture, Ltd.)*, 166 B.R. 428, 436 (C.D. Cal. 1993) (internal citations omitted). Allowing the Debtor to treat BOTW as proposed through the Plan unfairly shifts the risks of reorganization to BOTW and is yet another reason that the Plan is unconfirmable.

## V.
## RESERVATION OF RIGHTS TO OBJECT TO PLAN

20. This Objection should not be construed as a substitute for any objection made by BOTW to the Plan. BOTW reserves its rights to object to confirmation of the Plan.

**WHEREFORE**, the BOTW respectfully requests that this Court grant the relief requested herein and grant such other and further relief as may be just and proper.

Dated: January 11, 2011

> Respectfully submitted,
>
> **GARDERE WYNNE SEWELL, LLP**
>
> */s/ Benjamin H. Price*
> David S. Elder (TX 06507700)
> Benjamin H. Price (TX 24060441)
> GARDERE WYNNE SEWELL LLP
> 1601 Elm Street, Suite 3000
> Dallas, Texas 75201-4761
> Telephone: (214) 999-3000
> Facsimile: (214) 999-4667
>
> COUNSEL FOR BANK OF THE WEST

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on January 11, 2011, a true and correct copy of the foregoing document was served (i) via this Court's PACER system on all parties receiving electronic notifications in this case and (ii) via e-mail on the following individuals:

1. Eric A. Liepins, esq. at eric@ealpc.com
2. Mary Frances Durham, esq. at maryfrances.durham@usdoj.gov

> */s/ Benjamin H. Price*
> Benjamin H. Price